Argued October 4, reversed November 7, rehearing denied December 4, 1923.

## STOUT *v.* VAN ZANTE, EXECUTOR.

(219 Pac. 804; 220 Pac. 414.)

**Husband and Wife—Common-law Doctrine That a Conveyance to Husband and Wife Creates a Tenancy by Entirety has not Been Abrogated by Statute.**

1. The common-law doctrine that a conveyance to a husband and wife creates in them a tenancy by entirety has not been abrogated by Section 9852, Or. L., providing that a conveyance to two or more creates a tenancy in common, unless contrary expressly declared; Section 9936, abolishing joint tenancies; or Sections 9743–9762, Title 51, conferring upon married women the right to control and dispose of their separate property.

**Husband and Wife—Where Conveyance to Husband and Wife Created Them Tenants by Entirety, Their Conveyance to a Third Party Ended Such Tenancy.**

2.   Where a conveyance to a husband and wife created a tenancy by the entirety, such tenancy was ended when they conveyed the land.

**Husband and Wife—Common-law Disabilities of a Married Woman have Been Removed by Statute.**

3.   The common-law disabilities of a married woman have been entirely removed by statute, and a married woman may now control and dispose of her separate property to the same extent as her husband can of his.

**Husband and Wife—Common-law Rule That if Husband Took Note Payable to His Wife or to Himself and Wife, It Imported a Gift to the Wife, is not in Force.**

4.   The common-law rule that if a huband took a promissory note payable to his wife alone, or to himself and wife jointly, it imported a gift to the wife, is not the rule in this state, as, since the enactment of legislation respecting the rights of married women, the reason for the rule no longer exists, and to apply the doctrine would import into the statute terms not included therein.

**Husband and Wife—Estates by Entirety Do not Exist in Personal Property.**

5.   In this state estates by entirety do not exist in personal property.

**Mortgages—Mortgage Does not Operate to Vest an Estate in the Mortgagee.**

6.   A mortgage does not operate to vest in the mortgagee an estate in the mortgaged property, but merely creates a lien upon the land as security for the payment of the debt.

**Husband and Wife—Taking of a Note Payable to Husband and Wife and Secured by Mortgage Does not Create a Tenancy by Entirety.**

7.   Where husband and wife were the owners of real property as tenants by the entirety, and conveyed the land, taking notes made payable to both, secured by a mortgage on the land, the taking of the notes did not create in them a tenancy by entirety.

**Husband and Wife—Joint Tenancy of Notes Held Nonexistent at Common Law as Between Husband and Wife.**

8.   At common law husband and wife did not become joint tenants of notes acquired by them jointly; joint tenancy being inconsistent with the marriage relationship, since there can be moieties between them.

5.   Rule that estate by entirety cannot exist in personal property, see notes in 8 A. L. R. 1022; 22 L. R. A. 594; 30 L. R. A. 317, 327.

Joint Tenancy—Right of Survivorship, the Chief Characteristic, has
     Never Been Recognized in State.

9.   Except as to estates in trust and executors, the right of sur-
vivorship, the chief characteristic of joint tenancy, has never been
recognized or upheld as an existing right in this state.

Joint Tenancy—Abolished in This State Except in Case of Trustees
     and Executors.

10.   Under Section 9852, Or. L., providing that a conveyance to
two or more creates a tenancy in common unless expressly declared
joint tenancies, and Section 9936, abolishing joint tenancies, when
construed in connection with Section 9938, construing conveyances,
etc., of real or personal property to trustees as joint tenancies, ap-
ply to personal as well as real property, and the common-law
doctrine of joint tenancy, except in case of trustees and executors,
has been abolished in this state.

From Multnomah: T. E. J. DUFFY, Judge.

Department 1.

REVERSED.

For appellant there was a brief and oral argument
by *Mr. Albert H. Tanner*.

For respondent there was a brief and oral argu-
ment by *Mr. Andrew Koerner*.

RAND, J.—The plaintiff and her husband were the
owners of real property in Sherman County, Oregon,
under a conveyance made to them while husband and
wife. They sold and conveyed the land, taking, for a
part of the purchase money, notes made payable to
both of them, which are secured by a mortgage upon
the land. The husband died testate and the defend-
ant is executor of the will. The notes, for the pur-
poses of administration, are in the possession of the
executor, and were listed in the inventory and ap-
praisement as belonging, in equal shares, to the plain-
tiff and the estate. Claiming to be the sole owner of
the notes, as survivor, the plaintiff brought action to
recover their possession from the executor, and ob-

tained a judgment adjudging her to be the sole owner and entitled to the possession thereof.

It is contended on behalf of the plaintiff that she and her husband were not only each seised of an estate by the entirety of the lands, but also of the notes, and that upon the death of the husband, the plaintiff, as survivor, became the sole owner of the notes as she would have been of the land, if it had not been sold, while defendant contends that estates by the entirety are abolished by the provisions of Sections 9852 and 9936 and Chapter 2 of Title LI, Or. L.

1. Section 9852 provides that a conveyance or devise of lands or of an interest therein to two or more, in their own right, creates a tenancy in common unless it is expressly declared in the conveyance or devise that they shall take the lands as joint tenants, and by Section 9936, joint tenancies are expressly abolished. The provisions of the married woman's acts embraced in Chapter 2 of Title LI confer upon a married woman the same right to the control and disposal of her separate property that a husband has over his.

Under the common law "if an estate in fee be given to a man and his wife, they are neither properly joint tenants, nor tenants in common: for husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety, *per tout, et non per my* (by all and not by the half); the consequence of which is, that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor." 2 Black. Com. *182.

The common-law doctrine, that a conveyance to a husband and wife creates in them a tenancy by the entirety, has not been abrogated by statute in this state: *Noblitt* v. *Beebe,* 23 Or. 4 (35 Pac. 248); *Howell*

109 Or.—28

v. *Folsom,* 38 Or. 184 (63 Pac. 116, 84 Am. St. Rep. 785); *Hayes* v. *Horton,* 46 Or. 597 (81 Pac. 386); *Oliver* v. *Wright,* 47 Or. 322 (83 Pac. 870); *Chase* v. *McKenzie,* 81 Or. 429 (159 Pac. 1025); *Myers* v. *Reed,* 17 Fed. 401.

That the common-law doctrine is in force in this state follows from the conclusion reached by the court in the foregoing cases, for at the time of their rendition all of the statutes referred to had been enacted and were in full force and effect. The question, therefore, is no longer an open one in this state.

That estates by the entirety are not abrogated or abolished by these or similar statutes seems to be supported by the great weight of authority in other jurisdictions: *Bertles* v. *Nunan,* 92 N. Y. 152 (44 Am. Rep. 361); *Goodrich* v. *Otego,* 160 App. Div. 349 (145 N. Y. Supp. 497); *Matter of Klatzl,* 216 N. Y. 83 (110 N. E. 181); see also, authorities cited in 18 C. J. 329; 30 C. J. 557, 558 and 561; see also authorities cited by Judge Cooley in his note, 2 Cooley's Black. (4 ed.), *183; 1 Bishop, Law of Married Women, § 615.

2. At common law the husband and wife were regarded as one person, and a conveyance to them was, in law, a conveyance to but one person. They took the whole of the estate between them and each was seised of the whole because they were legally but one person. They did not take as tenants in common or joint tenants, but by the entirety, and in the instant case, if the husband or wife had died before the lands were sold, the survivor would have taken the whole estate, "not by right of survivorship simply, but by virtue of the grant which vested the entire estate in such grantee." (*Bertles* v. *Nunan, supra.*) But they sold and conveyed the land to a third party and thereupon their tenancy by the entirety was at an end.

The question of whether, upon a conveyance by a
husband and wife of lands of which they were tenants
by the entirety, notes secured by a mortgage on the
land and given for a part of the purchase money and
made payable to them jointly, are held by them as
tenants by the entirety, and upon the death of one, the
legal interest in the notes will pass to the other as
survivor, does not seem, thus far, to have been decided
in this state.

Under the common law, a mortgage is an estate
created by a conveyance, absolute in its form, but in-
tended to secure the performance of some act, such
as the payment of money, and the like, and to become
void if performed agreeably to the terms prescribed
at the time of making such conveyance, but if the con-
dition fail to be fulfilled punctually, all right of the
grantor to the estate is thereafter gone and the mort-
gagee becomes the absolute and unconditional owner
of the entire estate. A mortgagee in fee of land is
considered as absolutely entitled to the estate which
he may devise or transmit by descent to his heirs. He
takes it subject to its being defeated by the doing of
some act, such as the payment of money in a pre-
scribed time and manner. "It is, therefore, an estate
defeasible by the performance of a condition sub-
sequent." 2 Washburn on Real Property (5 ed.),
pp. 36, 100.

Under the laws of this state, a mortgage of real
property does not convey the title to the mortgaged
property nor create an estate therein, but merely
creates a lien or encumbrance against the property as
security for the payment of a debt or the fulfillment
of an obligation, and becomes void on payment of the
debt or the fulfillment of the obligation. The full
legal and equitable title, both before and after condi-

tion broken, remains in the mortgagor until fore-
closure and judicial sale. The interest created by the
mortgage is of a personal nature, like that which the
mortgagee has in the debt itself, and until foreclosure,
the mortgagor has the entire fee subject to the lien
of the mortgage. The mortgage is a mere chose in
action held as collateral security for the payment of
a debt: *Schleef* v. *Purdy*, 107 Or. 71 (214 Pac. 137),
and authorities there cited; *Matter of Albrecht*,
136 N. Y. 91 (32 N. E. 632, 32 Am. St. Rep. 700, 18
L. R. A. 329).

At common law the husband and his wife were
deemed, in law, to be but one person, and that person
was the husband. The wife, by marriage, merged her
personality in the person of her husband and the
effect of the marriage was to deprive her of all
separate legal existence. She could make no contract
binding upon herself or upon her husband without
his consent. Her identity was so completely merged
in that of her husband that she could no more contract
with him than with a stranger. By the marriage the
husband became possessed of all her real estate dur-
ing her life, and, if a living child was born of the
marriage, he had her real estate during his own life,
if he survived her. All of the rents, issues and
profits arising from her land during coverture, if re-
duced into possession by him, were absolutely his.

All of the personal property which the wife had in
actual possession at the time of the marriage became
his property as absolutely and entirely as if she had
made a transfer of it to him, and this consisted of her
goods and chattels, or things which could be handled
and which were actually in her hands or under her
direct and immediate control, and included goods and

specific chattels in the hands of third parties. But as to things in action or choses in action, the law was different. The husband could, if he pleased, reduce them to his possession and make them absolutely his own. This he could do by any act which was distinctly an act of ownership, such as demanding and collecting a debt due to her, or indorsing her notes, or transferring them, or having her stock transferred to his own name, or by making any final and effectual disposition of them. If, however, the husband did not reduce them to possession before his death and the wife survived him, her whole right and property in these choses in action revived at his death, but if he survived her he had a right to be appointed her administrator and then collect and hold the proceeds as his own.

A promissory note was, at common law, a chose in action, and if a promissory note belonged to the wife and was not reduced into possession by the husband before his death, and she survived him, her whole right in the note revived at his death. The husband was liable for all the debts for which his wife was liable when he married her, whether she brought any property to the marriage or not: Parsons, Merc. Law, p. 9, § 3; 1 Chitty on Plead. (16 Am. ed.), *33–38; 1 Daniel on Neg. Inst., § 239 et seq.; Schouler's Domestic Relations (5 ed.), § 87.

"When a chose in action, such as a bond or note, is given to a *feme covert,* the husband may elect to let his wife have the benefit of it; or if he thinks proper, he may take it himself. If he do no act in his lifetime which amounts to an election to take it himself, and to an expression of dissent to his wife's having any interest in it, it survives to the wife. *Caters* v.

*Madeley*, 6 M. & W. 423.'' Note, 1 Chitty on Plead. (16 Am. ed.), *37.

Under the early common law, a note taken by the husband in the name of his wife or in their joint name was presumed to have been intended by him as a gift to his wife, and that by taking a note so payable he consented that the title to the note should, upon his death, pass to her as survivor: Tiedeman, Com. Paper, § 63; 1 Daniel on Neg. Inst. (6 ed.), § 255.

The reason for the rule was that the husband had a right to take the note for himself and, having taken it in the name of himself and wife, or in the name of the wife, it indicated an election upon his part for her to have it, if uncollected at the time of his death.

3. The common-law disabilities of a married woman have been entirely removed by statute in this state, and a married woman may now control and dispose of her separate property to the same extent that her husband can of his.

4. The early common-law rule, that if a husband took a promissory note payable to his wife alone, or to himself and wife jointly, it imports a gift to the wife, has never been declared as a rule of law in this state, and since the enactment of the legislation respecting the rights of married women, the reason for the rule no longer exists, and to now apply this doctrine to notes made payable to a husband and wife jointly, would seem to be mere judicial legislation, as it would import into the statute terms not included therein.

It is true that in England and in those states where the common-law doctrine, that a mortgagee acquires, by virtue of the mortgage deed, a seisin or an estate in the premises, prevails, it has generally been held that the giving of a note payable to a husband and

wife jointly for a part of the purchase money of lands held by them as tenants of the entirety, makes them tenants by the entirety of the notes, and from this it naturally followed for courts in those jurisdictions to hold that estates by the entirety could exist in personal property: See note, 8 A. L. R. 1018, subd. 3, and cases there cited.

5. In this state it has never been held that estates by the entirety exist in personal property, and under the definition of estates by the entirety given by Blackstone, they were confined and restricted to estates in fee given to a man and his wife, which definition excludes personal property from the operation of the rule.

6, 7. In those states where, as in this state, a mortgage does not operate to vest in the mortgagee an estate in the mortgaged property but merely creates a lien upon the land as security for the payment of a debt, in the absence of contract or gift, we can find no case in which it has been held that the transaction of taking a note payable jointly to a husband and wife, secured by a mortgage upon land, creates in them a tenancy by the entirety as to the notes, or which holds that upon the death of either the legal interest of the deceased spouse in the note passes to the survivor. In fact, the rule seems to be directly to the contrary: *In re Albrecht, supra; In re Baum,* 121 App. Div. 496 (106 N. Y. Supp. 113); *In re Berry,* 247 Fed. 700; see also note, 8 A. L. R. 1022, subd. 4.

The evidence entirely fails to disclose that there was any agreement between the husband and wife that upon his death the plaintiff should become the owner of his interest in the note, and there is no evidence upon which a gift *causa mortis* can be sustained.

For these reasons the judgment must be reversed, and it is so ordered.

REVERSED.

McBRIDE, C. J., and HARRIS, J., concur.

BURNETT, J., took no part in the decision of this case.

---

Rehearing denied December 4, 1923.

ON PETITION FOR REHEARING.

(220 Pac. 414.)

*Mr. Andrew Koerner,* for the motion.

*Mr. Albert H. Tanner, contra.*

RAND, J.—8. Upon petition for rehearing counsel for respondent contends that in deciding this cause the court has entirely overlooked and ignored what he now insists was his principal contention, namely, that at common law a husband and wife were not only tenants by the entirety of choses in action acquired by both of them during coverture, but also held such choses in action as joint tenants with the right of survivorship in the one who outlived the other, and that if the common-law doctrine of tenancy by entirety does not prevail in this state in its application to personal property, the common-law doctrine applicable to joint tenancy, not having been abrogated by statute, does, and that upon the death of her husband, the respondent, as survivor, became the sole and absolute owner of the notes. This contention implies that at common law a husband and wife, upon the acquisition by them jointly of property during coverture, not only

held the property by the entirety but also as joint tenants. This supposition, however, is erroneous.

In discussing various definitions of the term "joint tenancy," Mr. Freeman accepts as a correct definition the following: "Joint tenancy is when two or more persons, not being husband and wife at the date of its acquisition, have any subject of property jointly between them in equal shares by purchase." And he says: "Whenever a husband procures stocks in the name of himself and wife, or takes notes, mortgages or other securities in his and her names, a tenancy by entirety is created in such stocks, notes, mortgages or other securities." Freeman on Cotenancy and Partition (2 ed.), §§ 10, 68.

In 1 Greenl. Cruise, 840, 841, the author says:

"As there can be no moieties between husband and wife they cannot be joint tenants; therefore, where an estate is conveyed to a man and his wife, and their heirs, it is not a joint tenancy; for joint tenants take by moieties, and are each seised of an undivided moiety of the whole. But husband and wife, being but one person, cannot, during the coverture, take separate estates; therefore, upon a purchase made by them both, each has the entirety, and they are seised *per tout,* not *per my.*"

In 7 R. C. L. 812, the authors say:

"A tenancy by entirety has the four unities incident to joint tenancy, and in addition thereto the unity of person. An instance of this is where, under the common law, a joint conveyance is made to husband and wife. While joint tenancy may be vested in any number of natural persons more than two, tenancy by the entirety can be vested in only two natural persons, and those two are regarded as but one in law. In joint tenancy each is seised of an undivided moiety of the whole, while husband and wife take each an entirety."

"Joint tenancies were formerly favored at law, because they were against the division of tenures; but

as tenures are, many of them, taken away, and in a great measure abolished, that reason ceases, and courts of law now incline against them as much as is done in equity. They are a kind of estate that does not make provision for posterity." *Martin* v. *Smith,* 5 Binn. (Pa.) 16, (6 Am. Dec. 395).

9, 10. Hence, under the rules of the common law, the respondent and her husband would not have become joint tenants of notes acquired by them jointly during coverture. Nor do we agree with the contention now made that while joint tenancy, in its application to real property, is now abolished by statute in its application to personal property it is not. Except as to estates in trust and executors, the right of survivorship, the chief characteristic of joint tenancy, has never been recognized or upheld as an existing right by the courts of this state. Except as to trustees and executors, no case has been cited, and we have found none where it has ever been suggested that the common-law doctrine of joint tenancy has ever prevailed in this state. Eminent authorities hold that statutes containing provisions similar in terms and effect to those contained in Sections 9852 and 9936, Or. L., apply to personal property as well as to real: See *Mills* v. *Husson,* 140 N. Y. 99 (35 N. E. 422), and *Overheiser* v. *Lackey,* 207 N. Y. 229 (100 N. E. 738, Ann. Cas. 1914C, 229). In the first case the court said "that the rules governing estates or interests in lands, whether founded upon statutes or upon general principles of law, should, as far as practicable, be applied to estates or interest of a like character in personal property." And quoted with approval from a former decision of that court, as follows: "There is certainly much force in the position that one body of law should not declare a different rule for two kinds of property, when there is nothing in the nature of either kind of

property or in the nature and effect of the rule that calls for it.'' A statute of New York, almost identical in terms with Section 9852, Or. L., was held to apply to personal estate as well as to real: See *Mills v. Husson, supra,* and authorities there cited.

Construing Sections 9852 and 9936, Or. L., in connection with Section 9938, we are of the opinion that these statutes apply to personal property as well as to real, and that the common-law doctrine of joint tenancy, except in the case of trustees and executors, has been abolished in this state.

The petition for rehearing is denied.

REHEARING DENIED.