Submitted on briefs June 30; reversed July 14, 1936

HOLMAN, State Treasurer, *v.* MAYS et al.

(59 P. (2d) 392)

*I. H. Van Winkle,* Attorney-General, of Salem, and *David S. Husted,* of Portland, for appellant.

*Huntington, Wilson & Davis,* of Portland, for respondents.

BEAN, J. This is an appeal by the state treasurer from an order and decree of the circuit court affirming a determination of inheritance tax by the county court of the estate of F. P. Mays, deceased.

On February 29, 1932, F. P. Mays died testate. He was a resident of The Dalles, Wasco county, Oregon, in which county letters testamentary were issued to G. W. Mays, as executrix of the last will and testament of F. P. Mays, deceased. The inventory of the estate disclosed a value of $343,748.34. A petition for determination of inheritance tax sets forth the value and segregation of the assets of the estate. The executrix claimed that the deposit accounts with the United States National Bank of Portland, Oregon, and the First National Bank of The Dalles, Oregon, standing in the name of "F. P. or G. W. Mays" were held as tenants by the entirety and therefore the same should be excluded from the inventory, and the gross taxable estate, and the total thereof, $26,829.86, should be deducted from the appraised value. Certain other expenses of administration and indebtedness at the date of his death were also deducted, which resulted in a net taxable estate of $288,945.54. Upon this sum the tax was, by order, determined on February 24, 1933. The state treasurer filed objections thereto. The first objection was sustained by the county court and, no appeal having been taken by the executrix, it is not now before this court. The second objection was that the total amounts contained in the bank accounts were a proper part of the inventory and net taxable estate and were not held by decedent and his wife as tenants by the entirety. The matter is before this court on the record and stipulation of facts by virtue of appeals by the state treasurer from the county and circuit courts. It is stipulated, *inter alia*:

"(B). That at the time of the death of said F. P. Mays, there was on deposit in a checking account at First National Bank, The Dalles, Oregon, the sum of $16,721.80. Said checking account was carried on the

books of said bank and on the statements issued from month to month under the names Mr. or Mrs. F. P. Mays; that said account had been established prior to May 20, 1925, at Wasco County Bank, The Dalles, Oregon, and when first established was in the name of F. P. Mays; that on May 20, 1925 said F. P. Mays, with the knowledge and consent of his wife, Genevieve W. Mays, also referred to as G. W. Mays, and also referred to as Mrs. F. P. Mays, wrote a letter to said Wasco County Bank, a true copy of which marked Exhibit 'A' is attached hereto and made a part of this stipulation; that said bank replied to said letter on May 22, 1925, a true copy of which reply marked Exhibit 'B' is attached hereto and made a part of this stipulation; that thereafter said F. P. Mays and G. W. Mays signed the bank's signature card, a true copy of which marked Exhibit 'C' is attached hereto and made a part of this stipulation; said signature card was delivered to said bank and was placed in the bank's file covering active checking accounts. That after the transactions above referred to, which occurred in May, 1925, the bank changed the name of the account on its books from F. P. Mays to Mr. or Mrs. F. P. Mays and the account was thereafter carried in the latter names. That subsequent to May 22, 1925, said Wasco County Bank was merged with said First National Bank, The Dalles, Oregon, and at the time of such merger the deposit liability of said Wasco County Bank was assumed by said First National Bank and the said account of Mr. or Mrs. F. P. Mays was transferred to said First National Bank and was carried by the latter bank under the names Mr. or Mrs. F. P. Mays up to the time of the death of said F. P. Mays.

"Funds belonging to both Mr. and Mrs. F. P. Mays were deposited in said account from time to time and withdrawals were made for each of said parties. However, withdrawals made for Mrs. Mays exceeded deposits with her individual funds and Mrs. Mays does not claim that any part of the balance in said deposit account at the time of the death of said F. P. Mays was

made up by or included her individual funds. Her claim to said balance is that said Exhibits A, B and C constitute an agreement under which she and said F. P. Mays held said bank account as tenants by the entirety. * * *

(The state treasurer insists that the Exhibits "A", "B" and "C" are immaterial as proof of an agreement between F. P. Mays and G. W. Mays and said First National Bank or between any two or more of them, and insists that the documents be excluded).

"(C). That at the time of the death of said F. P. Mays there was on deposit in a checking account at the United States National Bank, Portland, Oregon, the sum of $36,937.91. Said account was under the name F. P. or G. W. Mays. Said account was carried by said bank under an agreement between said F. P. Mays, G. W. Mays and the bank, copy of which agreement, marked Exhibit 'D' is attached hereto and made a part of this stipulation. That the authorized signatures on said account were F. P. Mays or G. W. Mays. There was no other agreement except the one set forth in said Exhibit 'D'.

"Practically all of the income of said F. P. Mays and G. W. Mays for over two years prior to the death of F. P. Mays went into this bank account and a large portion of the disbursements made by said parties was made against this account.

"Under the Federal Inheritance Tax laws of the United States, estates by the entirety in both real and personal property are taxable to the extent that deceased contributed to the property making up the estate by the entirety and therefore in connection with the Federal Estate Tax return, it was necessary for the executrix to make a showing as to what deposits were made to said bank account by each depositor and what withdrawals were made therefrom by each depositor. That the showing made by said executrix in the Federal Estate Tax return referred to above is set forth in Exhibit 'E', pp. 1 and 2, attached hereto and made a part of this stipulation, and there is set out on pp. 3 to 5 of said Exhibit 'E' a statement showing a list of

the items deposited to said account by said G. W. Mays during the period from January, 1931 to February, 1932, both months inclusive, and the parties hereto stipulate that said Exhibit 'E' sets forth a true account of deposits and withdrawals made by the two depositors and that the difference between the deposits and withdrawals of F. P. Mays up to the time of the death of said F. P. Mays was $19,613.52 and the difference between deposits and withdrawals of G. W. Mays was $17,324.39 and that said two amounts made up the balance in said bank account of $36,937.91 at the date of death of said F. P. Mays. * * *''

The gist of the letter of F. P. Mays to the bank, dated May 20, 1925, is that he would like to have his account

''hereafter to be carried in the name of F. P. and G. W. Mays instead of F. P. Mays. I would sign my checks as before and Mrs. Mays, F. P. Mays, G.W.M. Each of us to own one half and withdraw all.

''I have written the above stupidly: it is to be a joint account, to be checked as above stated in whole or in part, and survivor take it all.''

Exhibit B shows that the bank acknowledged receipt of Mr. Mays' letter and check for deposit contained therein and informed him he could draw his check for the amount of the balance of his account, and they would open a new joint account for himself and wife, or they would add the wife's name to the present account and continue with the old account, and enclosed signature cards for the signatures of both Mr. and Mrs. Mays. The signature cards, Exhibit C, were signed and returned.

Exhibit D is as follows:

''The United States National Bank of Portland.
''Accepts the joint account herein provided for under the following conditions, which are accepted by

the undersigned and constitute a contract between the Bank and the depositor and/or each of them.

"Deposits entered herein are payable to either F. P. Mays or G. W. Mays or the survivor, and in case of the temporary closing of this account, you are hereby notified that a deposit thereafter by either is to be payable to either or the survivor, in case of the death of either, unless you are otherwise notified.

"Each depositor is authorized to sign and endorse checks, notes, drafts or other commercial paper payable to the other, and deposit the same in this account, and each depositor is the general agent of the other for all purposes connected with making deposits to this account or drawing checks thereon, and in case of overdrafts by either, or overpayment to either, said overdraft or overpayment having arisen by error, mistake, inadvertence or otherwise, they are jointly and severally liable to the bank for such overdraft or overpayment. (Signed) F. P. Mays G. W. Mays."

There are involved in this appeal the questions as to whether the two bank accounts mentioned, or any part thereof, should be included in the gross estate for the purpose of determining the inheritance tax payable by the estate of F. P. Mays, deceased, to the State of Oregon. The state treasurer insists that the account in the United States National Bank of Portland, designated "F. P. Mays or G. W. Mays" in the sum of $36,937.91, to the extent that it is made up of contributions by the deceased, should be included in the gross estate. The executrix contends that by agreement between the bank and the depositors, attached to the stipulation of facts, this account is not subject to the inheritance tax law and not taxable under the laws in effect at the date of F. P. Mays' death. The same contentions or claims are made in regard to the account in the First National Bank of The Dalles, Oregon.

Section 10-601, Oregon Code 1930, as far as material here, provides:

"All property within the jurisdiction of the state, and any interest therein, whether belonging to the inhabitants of this state are not, and whether tangible or intangible, which shall pass or vest by dower, curtesy, will or by statutes of inheritance of this, or any other state, or by deed, grant, bargain, sale or gift, or as an advancement or division of his or her estate made in contemplation of the death of the grantor, or bargainor, or intended to take effect in possession or enjoyment after the death of the grantor, bargainor or donor to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled, in possession or expectation, to any property on income thereof, shall be and is subject to tax at the rate hereinafter specified in section 11-603, to be paid to the treasurer of the state for the use of the state; and whenever property, real or personal, other than estates held by the entirety, is held in the joint names of two or more persons, or deposited in banks or other institutions or depositories in the joint names of two or more persons and payable to either or the survivor, upon the death of one of such persons, the right of the surviving joint tenant or tenants, person or persons to the immediate ownership or possession and enjoyment of such property shall be deemed a transfer taxable under the provisions of this act in the same manner as though the whole property to which such transfer relates belonged absolutely to the deceased joint tenant or joint depositor and had been devised or bequeathed to the surviving joint tenant or tenants, person or persons, by such deceased joint tenant or joint depositor by will, excepting therefrom such parts thereof as may be shown to have originally belonged to such surviving joint tenant, joint depositor or person, and never to have been acquired from the decedent for less than a fair consideration in money or money's worth, * * *."

The legislature amended section 10-601 at the session following the court's decision in the case of *In re Edwards' Estate,* 140 Or. 431 (14 P. (2d) 274), changing the clause in that section to read as follows: "and whenever property, real or personal, other than real property held by the entirety, is held", etc. This amendment was enacted by the legislature of 1933 and became effective 90 days after adjournment: Oregon Laws 1933, p. 44, ch. 26. We do not deem this amendment important.

The question is, by virtue of section 10-601, were the joint deposit accounts in the two banks exempt from taxation as a part of the estate of F. P. Mays at the time of his death? In other words, are the funds in question, or some part thereof, taxable under that clause of the statute quoted, which provides:

"and whenever property, real or personal, other than estates held by the entirety, is held in the joint names of two or more persons, or deposited in banks or other institutions or depositories in the joint names of two or more persons and payable to either or the survivor, upon the death of one of such persons, the right of the surviving joint tenant or tenants, person or persons to the immediate ownership or possession and enjoyment of such property shall be deemed a transfer taxable under the provisions of this act in the same manner as though the whole property to which such transfer relates belonged absolutely to the deceased joint tenant or joint depositor and had been devised or bequeathed to the surviving joint tenant or tenants, person or persons, by such deceased joint tenant or joint depositor by will, excepting therefrom such parts thereof as may be shown to have originally belonged to such surviving joint tenant, joint depositor or person, and never to have been acquired from the decedent for less than a fair consideration in money or money's worth, * * * ."

■ We think the language of the statute is plain and subjects the funds in question to the inheritance tax according to the provisions thereof. The statute is so explicit in respect to joint bank deposits that it hardly seems necessary for a construction thereof. It describes the deposit account of Mr. and Mrs. Mays in the Portland bank perfectly, and the account in the First National Bank of The Dalles is practically in the same condition. It is not possible to believe that the legislature intended to exempt such joint bank deposit account as an estate by the entirety, and then immediately describe such joint deposit accounts and declare they should be deemed a transfer taxable under the provisions of the act. The deposit in the United States National Bank of Portland, according to the provisions of the inheritance tax law, is subject to such law, except as to such portion of the money that was deposited by Mrs. Mays, the survivor, and originally belonging to her. It is admitted by the state treasurer that the survivor, Mrs. Mays, contributed some $17,000 to make up the fund in the United States National Bank of Portland. In regard to the deposit in the First National Bank of The Dalles, the entire amount is taxable, inasmuch as Mrs. Mays, the survivor, did not contribute anything to that account.

■ It is quite well settled in the state of Oregon that under the law of this state an estate by the entirety in personal property can not be created: *Stout v. Van Zante,* 109 Or. 430 (219 P. 804, 220 P. 414); *McInnis v. Atlantic Inv. Corp.,* 137 Or. 648 (3 P. (2d) 118, 4 P. (2d) 314); *In re Edwards' Estate,* supra.

The disabilities of a married woman, as defined by the common law, have been entirely removed by statute in this state and the married woman may take control and dispose of her separate property to the

same extent that her husband can of his. Under the definition of estates by the entirety given by Blackstone, they are confined and restricted to estates in fee simple, to a man and his wife, which definition excludes personal property from the operation of the rule. The questions in regard to the creation of an estate by the entirety in personal property is thoroughly discussed by Mr. Justice RAND in the case of *Stout v. Van Zante,* supra, and by Mr. Justice ROSSMAN in the case of *In re Edwards' Estate,* supra, and no further discussion need be contained here.

The possibility of a severance and destruction of a joint bank account by one of the depositors withdrawing the whole fund renders it incapable of conforming to the essentials of a tenancy by the entirety: 30 C. J. 564, §§ 97, 98, 100; 13 R. C. L. 1116, §§ 136, 139, 152, 153; *Swan v. Walden,* 156 Cal. 195 (103 P. 931, 20 Ann. Cas. 194, 134 Am. St. Rep. 118).

The question in the case of *In re Edwards' Estate,* supra, differed from that in the case in hand. Each case depends to a very large extent upon its own facts and circumstances.

In 1 Bishop on The Law of Married Women, 140, § 211, we read:

"if real estate is conveyed by deed to a husband and his wife, this creates in them a peculiar kind of tenancy, known as tenancy by the entirety; the consequence of which is, that, during the coverture, neither can alien the land to the prejudice of the rights of the other, and on the dissolution of the coverture by the death of one of them the survivor takes the whole. Nothing of this sort is known in respect of personal property. * * *"

Whatever cognomen is applied to the ownership of the funds in question, the statute quoted excludes such ownership from being termed an estate by the entirety and subjects the deposits of money to the in-

heritance tax. We see no reason why it is not appropriate for the lawmakers of the state to regulate the matter the same as any other matter of taxation. It is not claimed to be unequal or unconstitutional.

Respectable authority can be found in favor of either view of the question in regard to estates by the entirety in personalty, but in view of the wide differences of opinion by the courts of last resort it seems that this question can not be determined by reference to the authorities of other states.

The difference between the deposits and withdrawals of Mrs. G. W. Mays in the Portland bank is $17,324.39, which was held by the bank in said account until the date of the death of F. P. Mays. Therefore, $19,613.52 of the deposits in the United States National Bank of Portland should be added to the gross estate for the purpose of determining the inheritance tax. The balance of the account should be excluded.

At the date of the death of F. P. Mays there were funds on deposit in the checking account in the First National Bank of The Dalles, Oregon, in the sum of $16,721.90. This amount is taxable under the inheritance tax law because Mrs. Mays contributed no part of this fund, and it should be added to the gross estate for the purpose of determining the inheritance tax.

The contracts mentioned, evidenced by Exhibits A, B, C and D, did not show the creation of an estate by the entirety in the funds in question.

It follows that the decree of the circuit court must be reversed and the cause remanded with directions to enter an order and decree in accordance herewith.

Under the facts in this case, both parties have acted in entire good faith. No costs should be taxed in favor of either party.

It is so ordered.